JONES *v.* JONES.

Opinion delivered October 29, 1906.

HUSBAND AND WIFE—PURCHASE BY HUSBAND WITH WIFE'S FUNDS.—Prior to the married women's act (Kirby's Digest, § 5213) a purchase of land by a husband with his wife's funds belonged to him, in the absence of clear proof of an election on his part to hold as trustee for her benefit.

Appeal from Greene Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*B. H. Crowley,* for appellants.

1. The property of a married woman which came to her by gift, bequest, descent, grant or conveyance shall be and remain her sole and separate property, and at her death revert to her heirs. Kirby's Digest, § § 5213, 5226; 47 Ark. 115; 29 Ark. 202; 73 Ark. 338. The property, having been bought and paid for by the wife, became her sole and separate property, and the husband could make no deed which would deprive her heirs of their rights in the same. 73 Ark. 56; 60 Ark. 74; 70 Ark. 145; 47 Ark. 180; Tiedeman, Real Prop. 500; 10 Am. & Eng. Enc. Law, 221; Eaton on Equity, 407; 6 Ballard on Real Prop. 808; Lawson on Contracts, 259.

2. If the evidence, or circumstances surrounding the procurement of the conveyance, show that the grantee possessed an undue influence over the grantor and exercised the same to the advantage of the grantee, equity will grant relief against the conveyance. 26 Ark. 604; 69 Ark. 251; 1 Rice on Ev. § 119; 2 *Id.* § 435; 3 Ballard on Real Prop. § 174; 27 Am. & Eng. Enc. of Law, 459. Whenever there is great weakness of mind (though not amounting to absolute disqualification) in one executing a conveyance, if the consideration is grossly inadequate, equity, upon proper and seasonable application, will set it aside. 94 U. S. 264; 11 Wheat. (U. S.), 121; 3 Witthaus & Becker, Med. Jur. 386; 175 U. S. 415; Benj. on Sales, 29 *et seq.*

3. Since at the time the quitclaim deed was executed there was no moving consideration therefor, it can not stand. Lawson on Contracts, 91; Tiedeman, Real Prop. 796 *et seq.;* Benj. on Sales, 354.

*Johnson & Huddleston, J. D. Block* and *W. S. Luna,* for for appellees.

1. There is no allegation in the pleadings, nor any evidence in the record, to show in whom the title to the lands was taken. Neither is there any evidence that Bethny Jones ever claimed the land in her lifetime, or that it was treated as her property by any one.

2. There is no evidence even remotely suggesting that there was any fraud or duress in obtaining the deed.

McCULLOCH, J. This is a suit in equity brought by the children of Jonathan Jones and his wife, Bethny Jones, both deceased, against Mrs. M. M. Jones, the widow of said Jonathan,

to recover a tract of land in Greene County. It is claimed that the land was purchased by Jonathan Jones with funds belonging to his wife, Bethny, the mother of plaintiffs, and that he subsequently conveyed it to the defendant.

The land in controversy was purchased in the year 1859 from one Brown. The deed has not been produced or accounted for, but it seems to be conceded that the land was conveyed to Jonathan Jones, and there are in the record certain receipts for payments which show that the purchase was made in the name of Jonathan Jones. In fact, the complaint alleges that the deed was made to Jonathan Jones, and this is not denied. A part of the purchase price was paid with proceeds of the sale of a slave owned by Bethny Jones, and a part by the proceeds of sale of land in Alabama formerly owned by Jonathan Jones but which had been sold under execution.

Conceding that all the funds used in payment of the price of the lands in controversy were derived from Bethny Jones, the facts fall squarely within the principles stated in *Gainus* v. *Cannon,* 42 Ark. 503, and the application thereof must control this case. The money and other personal property which Bethny Jones received from her father fell to Jonathan Jones by virtue of his marital rights, as they then existed under the common law, and remained his property as long as he saw fit to hold it as such, and unless he waived his right to it and elected to hold it as trustee for her benefit.

In *Leslie* v. *Bell,* 73 Ark. 338, the husband purchased real estate in his own name with funds derived from his wife's property, and we decided that he had elected to waive his common-law marital rights and hold the real estate as trustee for his wife. In that case, however, the proof was plain that he had elected to hold as trustee for his wife. But in the case at bar the proof is different. There is no proof of any intention on the part of Jonathan Jones to waive his right to the personal property of his wife, Bethny, or of his election to hold as trustee for her the real estate purchased. It is true there is some proof of statements made by him after her death to the effect that the land had been bought with funds belonging to her, and that her children could recover the land after his death, but these declarations are entirely too general and vague to manifest a solemn election on

his part to hold the land as trustee for his wife and her heirs. Especially so after he had bound himself by an antenuptial contract to convey the land to the defendant, his second wife, and after he conveyed the land to her by deed.

Judge EAKIN in *Gainus* v. *Cannon, supra,* in discussing the effect of much stronger evidence of an election to stand as trustee than is found in this case, said: "An examination of the evidence, which has been made under a very natural tendency to support her claim against the collateral heirs of her husband, fails to disclose any definite, clear agreement, on his part, to exercise and hold this fund as her trustee for her separate use. * * * Much of it consists of casual expressions with regard to his wife's ownership, which are commonly used by husbands with regard to property obtained through the wife, or which has been furnished by the husband with a special view to the wife's comfort or gratification. It is the conventional language of domestic affection, and does not ordinarily mean to imply legal or equitable title. * * * The proof that the husband received the money under a self-imposed trust to convert it into a home for her separate use is too indefinite and unsatisfactory to warrant a reversal of the decree on this point."

Appellants, as heirs of said Jonathan Jones, also undertake to cancel and set aside the marriage contract between the latter and appellee, and his deed executed to her, on the ground that he was mentally incapable of executing said documents. The evidence fails to sustain the allegations of mental incapacity.

The decree of the chancellor is correct, and is affirmed.